CHESNEY (WALLIS v.). See Case No. 17,-110.

CHESNUT (VANHORN v.). See Case No. 16,856.

═══

## Case No. 2,660.

### CHESTER et al. v. BENNER.

[2 Lowell, 76.] [1]

District Court, D. Massachusetts. Nov. 1871.

SEAMEN — LIABILITY FOR CHARGES FOR IMPRISONMENT IN FOREIGN JAIL—CONSTRUCTION OF SHIPPING ARTICLES.

1. Where seamen were imprisoned in a foreign jail by order of the American consul at that port, and there was no evidence of bad faith on the part of the master,—*Held*, this court, in a case not large enough to be appealed, is bound to follow the decision in Jordan v. Williams [Case No. 7,528], though doubting its correctness; and that the doctrine of that case, fairly carried out, requires the men to pay the necessary charges of the imprisonment, and the expense of hiring substitutes.
[Cited in Coffin v. Weld, Case No. 2,953.]

2. But the consul's own charges, as judge, are to be paid by the ship. Reasons for this rule.

3. A clause in the shipping articles by which the crew agree to pay charges of imprisonment does not bind them to pay the fees of the consul acting as judge.

In admiralty. This libel was for wages of six seamen, earned on a voyage of two months and twenty days, from Boston to Paramaribo, in Surinam, and back to Boston, in the bark Tidal Wave. The only dispute was, whether seventeen dollars and sixty-seven cents which had been retained from the pay of each man was rightly deducted. The answer alleged that, at Paramaribo, the libelants [Charles Chester and others] "became intoxicated and drunk, incapable of doing duty, and disobedient, insubordinate, and mutinous," &c.; that the master called in the consul, who ordered and caused the libelants to be detained in custody upon due legal proceedings, and that they were so detained for four days; that the master hired other persons to do the libelants' duty, at a cost in all of eighteen dollars in gold; three dollars for each man; and that the costs and expenses of the arrest, custody, board, and release of the libelants were ten dollars and sixty cents in gold for each of them; all which was paid. The certificates of the consul were received as evidence, by consent, and the only witness examined to the occurrences abroad was the master, who swore that the men, or some of them, were intoxicated one morning while in port, and all refused duty under pretense that the food was bad; that the consul came on board and examined the food, and pronounced it good, and gave the men five minutes to

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

return to duty, which they refused to do; and they were sent to jail until the ship was ready to sail, when they were returned on board, and performed the rest of the voyage; that before and after this time their conduct was irreproachable.

C. G. Thomas, for libelants.

J. B. Richardson, for respondent.

LOWELL, District Judge. This case, though small in the amount of money involved, is important to masters and crews generally. The imprisonment of our seamen in foreign jails has always been looked upon by courts of admiralty with disfavor, from the suffering and hardship which often accompany it; and there are many decisions which require the master to make use of this mode of restraint or punishment only in cases of necessity, where the great powers which the law gives him on board his own ship are inadequate to the emergency. It was also uniformly held that the consul had only an advisory power, and the master was responsible if the imprisonment was unjustifiable. Thus Hopkinson, J., in Johnson v. The Coriolanus [Case No. 7,380]: "I have repeatedly expressed my disapprobation of putting our seamen into foreign jails and dungeons, at the mercy of the local police-officers, for offenses by no means requiring such severity. For ordinary misconduct or insubordination, the power of the master on board his vessel is amply sufficient for all the purposes of discipline and subordination, and it is only in cases of extraordinary violence, where the safety of the vessel or of those on board requires that the offender should not be suffered to remain there, that he should be taken and imprisoned on shore. . . . And here I would again correct an error into which captains are continually falling. They seem to believe that, if they can get the consent or co-operation of the consul to their proceedings, it will be a full justification for them when they come home. . . . In all my experience I have never known a consul refuse the application of a captain to imprison a seaman," &c. In that case, on appeal, Mr. Justice Baldwin not only affirmed the decision, but said that if the case had come before him in the first instance he should have given damages for the imprisonment, as well as full wages. See note at the end of the report. The decisions, which, up to the year 1840, are entirely uniform, are collected in 2 Pars. Shipp. & Adm. 91, note 5. In 1840, congress passed an important act regulating the shipment and discharge of seamen, and the duties of consuls, of which the eleventh section requires those officers "to reclaim deserters and discountenance insubordination by every means within their power; and where the local authorities can be usefully employed for that purpose, to lend their aid and use their exertions to that end in the most effectual manner." 5 Stat.

395. This statute has been construed in the circuit court for this circuit to give consuls jurisdiction over the imprisonment of our seamen in foreign jails, and, in such case, to relieve the master from responsibility in the matter, if he has acted in good faith. Jordan v. Williams [supra]. That case virtually decides, that, in suits between the crew and the master or owners, such an imprisonment by order of a consul must be presumed to have been necessary; and, it seems to follow and is intimated by the court, that the necessary charges resulting from that course must fall upon the seamen, as between them and the owners, though they have a right of redress against the consul. In a case like this, in which no single sum in dispute is large enough to admit of an appeal, I must follow that decision of the circuit court, though I venture to think its reasoning unsound. Still, it remains my duty to inquire carefully into the nature and propriety of the charges, and whether they all fall strictly within the rule.

The sum deducted from each man's pay was seventeen dollars and sixty-seven cents in currency, equal to three weeks' pay of each able seaman, and more than six weeks' pay of the boy. At the rate at which the settlement was made, this sum is the equivalent of fifteen dollars and a half in gold; and, as I read the evidence, eighty cents of this, and no more, is the cost of subsistence for each man on shore, three dollars the cost of a substitute, and the rest is made up of fees of one kind and another, and largely those of the consul, who was the judge in the case. The evidence does not account for quite all the charges; but it is admitted that seven dollars in gold was charged against each man by the consul, and I think it may be not unfairly inferred that some of the items not accounted for were for his various certificates. At any rate, he charged in gold against each man two dollars for ordering the arrest, two dollars for ordering the imprisonment, two dollars for ordering the release, and one dollar for certifying. To the other reasons which admiralty courts have given for discountenancing this method of dealing with seamen, this case requires me to add the great and disproportionate expense which it entails. I am of opinion that it will be neither just nor prudent to oblige the crew to pay for a decision against them. If the ship pays the judge, the master will be interested to see to the charges; while, if the crew pay him, both the master and the consul will be interested in favor of a decision to imprison, because both will then recover costs. It is impossible that the crew should scrutinize the consular accounts, or even know of them until they are paid; and their right of action against the consul is, of course, of no value. In this instance, I doubt if any of these expenses would have been incurred if the ship had been known to be responsible for them.

While, therefore, I agree that in theory the owners should lose nothing, so long as the construction of the law remains as it is, yet practical justice requires, as a guarantee of good faith and a check on hasty action, and as the only possible means of keeping the fees within due bounds, that the consul's fees should be paid by the ship. There will be a trifling compensation in the subsistence which the ship will escape during the absence of the men.

The shipping articles contain this clause: "And whereas it frequently happens that the owner or captain incurs expenses while in a foreign port, relative to the imprisonment of one or more of his officers or crew, or in the attendance of nurses, or in the payment of the board on shore, for the benefit of such person or persons: now it is understood and agreed by the parties hereunto, that all such expenditures as may be incurred by reason of the foregoing premises shall be charged to and deducted out of the wages of any officer, or such one of the crew, by whose means or for whose benefit the same shall have been paid." Assuming, for the purposes of this case, that the stipulation is valid, it means only that the lawful and reasonable expenses of a necessary imprisonment shall be paid by the crew; and, if the action of the consul is to be conclusive of the necessity for imprisonment, his own fees do not appear to me to be a part of those reasonable expenses, for the reasons I have already given. The men, too, have all signed receipts in full; but it is testified by the respondent's witness that some of them protested against the amount of deductions: and courts of admiralty, when the facts are clear, and show that a smaller sum has been paid instead of a greater one due, never regard a receipt in full; though it is often of much significance in contradicting a case made up by an afterthought, or in cases of doubt or compromise.

Upon the whole, I think I ought to allow the respondents to deduct all excepting the consul's fees. I shall so examine the other charges with care, and require them to be well substantiated; but there seems nothing to impeach them here. It is admitted that the consul's charge against each man was seven dollars, and there is one dollar and ninety cents against each not accounted for. The burden of proof on the owners to establish their deductions may, perhaps, be fairly met by the receipts of the men; so that I ought not to charge this unexplained balance against the owners, unless it was probably a part of the official charges. There is some reason to believe that the consul did make further charges for his various certificates; and this may be inferred to be the origin of a part of the balance. I shall divide this between the parties. The crew, then, are to recover seven dollars and ninety cents each in gold, which is nine dollars in currency. Decree accordingly.